IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-01268-DME-NRN

PARK RISE HOMEOWNERS ASSOCIATION, a Colorado non-profit corporation,

Plaintiff,

v.

HDI GLOBAL SPECIALTY SE f/k/a INTERNATIONAL INSURANCE COMPANY OF
HANNOVER SE, a foreign corporation,

Defendant.

---

ORDER ON DISCOVERY DISPUTE

---

Entered by Magistrate Judge N. Reid Neureiter

This matter came before the Court on a discovery dispute on March 30, 2021.

This is an insurance (and insurance bad faith) dispute. Plaintiff Park Rise Homeowners

Association ("Park Rise") experienced roof damage to its multi-building condominium

complex (11 buildings total) from a hail and windstorm in 2017. Park Rise's Insurer,

Defendant HDI Global Specialty SE ("HDI"), inspected the property. There are disputes

as to the scope of the damage, the policy limits, as to the applicability of Park Rise's

approximately $350,000 deductible for hail damage.

One issue raised by the discovery dispute is the propriety of certain of

Defendant's redactions to Claim Notes entries produced by HDI in discovery. Plaintiff

Park Rise argues that entries in the Claim Notes constituted the memorialization of

"ordinary business activities" and were not properly redacted. Plaintiff points to

Defendant's Privilege Log (Dkt. #67-5), and the numerous entries attributing redaction

to "Attorney client privilege; Work Product" without additional detail. According to

Plaintiff, "[t]he privilege log submitted with the memoranda and emails does not offer

any basis for the privilege or protection asserted, and only employees of Premier Claims Management and HDI are indicated as correspondents." Dkt. #67-1 at 5.

I heard argument on certain aspects of the discovery dispute and ordered Defendant HDI to submit for *in camera* review certain redacted Claim Notes entries. *See* Dkt. #67 (minutes of discovery dispute proceeding). On April 5, 2021, HDI submitted under restriction for *in camera* review 103 pages of claims notes highlighting in yellow disputed redacted sections. *See* Dkt. #68-1. I did not require that claim notes that referred to prior or ongoing settlement discussions be produced in unredacted form.

**Legal Standard**

Because subject matter jurisdiction in this matter is based upon the Court's diversity jurisdiction, state law controls issues of privilege, including application of the attorney-client privilege, Fed. R. Evid. 501. Pursuant to Colo. Rev. Stat. § 13-90-107(1)(b), "[a]n attorney shall not be examined without the consent of his client as to any communication made by the client to him or his advice given thereon in the course of professional employment." Although now codified, "the privilege originated in the common law, and much of the common law jurisprudence pertaining to the privilege is retained." *People v. Tucker*, 232 P.3d 194, 198 (Colo. App. 2009). "The purpose of the attorney-client privilege is to secure the orderly administration of justice by insuring candid and open discussion by the client to the attorney without fear of disclosure." *Losavio v. Dist. Court In & For Tenth Judicial Dist.*, 533 P.2d 32, 34 (Colo. 1975).

A party resisting discovery based on the attorney-client privilege or work product immunity has the burden of establishing that the privilege applies. *Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 542 (10th Cir.1984) ("A party seeking to assert

the privilege must make a clear showing that it applies"); *Colorado v. Schmidt–Tiago Construction Co.*, 108 F.R.D. 731, 734 (D.Colo.1985) ("The burden of proving the attorney-client or work-product privileges rests on the person raising that privilege"). Under Fed.R.Civ.P. 26(b)(5), when a party withholds documents or other information based on the attorney-client privilege or work product protection, the party "shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection."

To satisfy the burden established by Rule 26(b)(5), the party asserting the privilege must provide a privilege log that describes in detail the documents or information claimed to be privileged and the precise reasons the materials are subject to the privilege asserted. *See McCoo v. Denny's, Inc.*, 192 F.R.D. 675, 680 (D.Kan.2000). The information provided in the privilege log must be sufficient to enable the court to determine whether each element of the asserted privilege is satisfied. *Horton v. United States*, 204 F.R.D. 670, 673 (D. Colo. 2002).

There is some complexity involved in applying the attorney-client or work product privileges in the insurance adjustment context. Colorado courts have recognized that an insurer cannot cloak with privilege actions or communications by or to an attorney that would normally be done by the insurer in the ordinary investigation of an insurance claim. There are the numerous decisions applying Colorado law that have considered whether communications are subject to the attorney-client privilege where the insurer retained an attorney to assist in adjusting an insurance claim. These decisions

"uniformly have held that insurance companies cannot claim privilege when an attorney is acting as a claim adjuster, rather than counsel." *Menapace v. Alaska National Ins. Company*, Civil no. 20-cv-00053-REB-STV, 2020 WL 6119962 (D. Colo. October 15, 2020) at *5.

In *National Farmers Union Property & Casualty Co. v. District Court for the City and County of Denver* ("*National Farmers*"), the Colorado Supreme Court considered the propriety of an insurer's assertion of attorney-client privilege and work product protection for a memorandum "prepared by outside counsel to inform [the insurer's] general counsel of the results of an investigation as to the facts regarding issuance of the policy and conclusions regarding whether a claim under the policy should be paid." 718 P.2d 1044, 1045-46 (Colo. 1986). The court found that the attorneys who prepared the memorandum "were performing the same function a claims adjuster would perform, and the resulting report [thus was] an ordinary business record of the insurance company." *Id.* at 1048; *see also id.* at 1049 (finding that, in conducting interviews to determine "the factual circumstances underlying the issuance of the policy . . . the attorneys were acting more in the role of claims investigator than legal counsel"). The court concluded that "the attorney-client privilege [did] not protect [the factual portion of the memorandum ordered to be produced] because the information contained therein was not legal advice but the results of a factual investigation relating to the issuance of a policy." *Id.* at 1049. Other portions of the memorandum, which contained legal conclusions, and a subsequent memorandum of a legal nature were deemed to have been properly withheld. *Id.*

In *Fiechtner v. American Family Mutual Insurance Company*, an insurer sought to exclude evidence related to its in-house counsel's involvement in the evaluation and adjustment of the plaintiff's insurance claim after the plaintiff initiated the litigation. 09-CV-02681-WJM-MEH, 2011 WL 4087296, at *1 (D. Colo. Sept. 13, 2011). The court found that, although the in-house counsel "was acting as an attorney with respect to some of his duties, and that some of his resulting actions or communications would therefore be privileged, at least to some extent, [the attorney] was acting as a claims adjuster rather than an attorney" and that the attorney's "actions in [that] capacity [we]re not protected by any attorney privilege or work-product doctrine." *Id.* at *2. The court thus permitted the plaintiff "to introduce evidence related to [the attorney's] post-litigation conduct to the extent it involve[d] [the attorney's] activities as a claims adjuster rather than an attorney." *Id.*

These and other decisions thus stand for the proposition that, where an insurer utilizes an attorney to both handle claims adjusting activities and also to provide legal advice, "the communications related to the claims handling functions (such as investigation, gathering and summarizing information, and valuation of the claim) are ordinary business activities of the insurance company typically handled by an adjuster or investigator and thus are not entitled to attorney client privilege." *Menapace*, 2020 WL 6119962 at *7. "However, communications related to the actual provision of legal advice are still protected by the attorney-client privilege." *Id.* These cases further make clear that, even where an attorney participates in claims adjusting activities to further their ability to offer legal advice (e.g., by investigating the factual basis for the claim),

"communications related to those claims adjusting activities still are not entitled to the protections of the attorney-client privilege." *Id.*

One further complication in this lawsuit is that it was filed in April 1, 2019. The case was stayed while the Parties availed themselves of the appraisal process contained in the insurance policy. *See* Dkt. #20 (Joint Stipulation for Continued Temporary Stay of Proceedings, filed Nov. 15, 2019); Dkt. #37 (Joint Motion to Stay Pending Appraisal, filed July 1, 2020); Dkt. #45 (Order lifting stay, filed Nov. 2, 2020). Since the lifting of the stay on November 2, 2020, the litigation has proceeded, and the continuing evaluation of the claim by the insurer has proceeded in parallel with the litigation.

The Claim Notes which have been submitted for in camera review appear to include numerous notes from Premier Claims Management LLC to the insurer. It appears that Premier Claims Management was being used as a third-party adjuster by the Defendant insurer. The issue for decision is whether claims notes that reflect legal thoughts or impressions addressing the litigation or legal interpretations of the policy are protected from disclosure based on the attorney-client privilege or attorney work-product doctrine.

### *In Camera* Review of Submitted Materials

With the above principles in mind, I reviewed the unredacted claim notes entries submitted for *in camera* review. All page references are to the page number (out of 103) of Dkt. #68-1. Other than the entries referred to below, I conclude that the redactions found in Dkt #68-1 are proper as either covered by the attorney-client or attorney work-product privilege.

| Page of DKT #68-1 | Description of Redaction | Ruling | Basis |
|---|---|---|---|
| p.4. | Language below "Reserves" and above "Settlement Negotiations" | Unredact | No apparent privilege |
| p. 13 | Redaction of "neutral appraiser" verbal opinion report to Defense Counsel | Unredact | This is not privileged. Communication with Appraiser should be unredacted. |
| p. 22 | Language reciting what appraiser verbally told defense counsel | Unredact | This is not privileged, and it is improper to try to hide verbal communications between insurer and supposedly "neutral" appraiser. |
| p. 22 | "Defense counsel informs us . . ." | Unredact | This appears to be a lawyer doing the work of a claims adjuster (obtaining estimates to replace roofs). This is not privileged. |
| p. 22 | "We do not yet have his formal opinion, but defense counsel, after talking to him . . ." | Unredact | This is communication with the appraiser. It is not privileged. |
| p. 30 | Redactions relating to communications with appraiser and contractors' estimates. | Unredact | Not privileged. |
| p. 80 | "In view of the previous exchanges, . . . " | Unredact | Part of business of insurance. Not privileged. |

Date: April 16, 2021

N. Reid Neureiter

N. Reid Neureiter
United States Magistrate Judge